# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**SHERILYN MATTISON**
    **Plaintiff,**

    v.                                      Case No. 09-C-60

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration,**
    **Defendant.**

## DECISION AND ORDER

Plaintiff Sherilyn Mattison brought this action for judicial review of the Commissioner's denial of her application for social security disability benefits. I found that most of plaintiff's arguments lacked merit, but that remand pursuant to 42 U.S.C. § 405(g), sentence four, was warranted on one issue. Plaintiff now applies for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Commissioner opposes the application.

### I.

Plaintiff may obtain attorney's fees if: (1) she was a "prevailing party" in the case; (2) the government's position was not "substantially justified"; (3) there existed no "special circumstances" that would make an award unjust; and (4) she filed a timely application. See 28 U.S.C. § 2412(d)(1); Kholyavskiy v. Holder, 561 F.3d 689, 690 (7th Cir. 2009); Stewart v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009); Cunningham v. Barnhart, 440 F.3d 862, 863 (7th Cir. 2006). Three of these four criteria are not in dispute. Because I remanded the case pursuant to sentence four and directed that judgment be entered in her favor, plaintiff is a prevailing party. See Shalala v. Schaefer, 509 U.S. 292, 300-02 (1993). Her application, filed within 30 days of when the judgment became final, i.e. unappealable,

is timely, see Richmond v. Chater, 94 F.3d 263, 266 (7th Cir. 1996), and the Commissioner suggests no special circumstances that would make a fee award unjust. The only subject in dispute is whether the government's position was substantially justified, an issue on which the Commissioner bears the burden of proof. Potdar v. Holder, 585 F.3d 317, 319 (7th Cir. 2009) (citing Floroiu v. Gonzales, 498 F.3d 746, 748 (7th Cir. 2007); Golembiewski v. Barnhart, 382 F.3d 721, 724 (7th Cir. 2004)).

To be substantially justified, the government's position must be "justified in substance or in the main" or "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). The government meets this burden if it had a reasonable basis in truth for the facts alleged, a reasonable basis in law for the theory propounded, and there was a reasonable connection between the facts alleged and the theory propounded. Conrad v. Barnhart, 434 F.3d 987, 990 (7th Cir. 2006).

Because the EAJA is not an automatic fee-shifting statute in favor of litigants who prevail against the government, the outcome of a case is not conclusive evidence of the justification for the government's position. Potdar, 585 F.3d at 319 (citing United States v. Hallmark Const. Co., 200 F.3d 1076, 1079 (7th Cir. 2000)). Rather, the court "must analyze and evaluate 'the factual and legal support for the government's position throughout the entire proceeding.'" Kholyavskiy v. Holder, 561 F.3d 689, 691 (7th Cir. 2009) (quoting Hallmark Constr. Co., 200 F.3d at 1080). Relevant considerations include the degree to which the government's position was supported by legal precedent, the novelty or uncertainty of the questions presented, and the presence of strong language against the government's position or a wholesale rejection of the government's position in the opinion on the merits. See id. at 691-92.

**II.**

At the merits stage, plaintiff argued that the Administrative Law Judge ("ALJ") who decided her claim erred (A) in various respects in determining her residual functional capacity ("RFC"), (B) in evaluating the credibility of her testimony, and (C) in denying the claim at step five of the sequential evaluation process based on the testimony of a vocational expert ("VE"). I found that only the final claim had any merit.[1]

**A.**

On the RFC issue, plaintiff argued that the ALJ failed to consider her impairments in combination and selectively cited the record; improperly rejected the findings of her treating physician, Dr. Pletcher; erred in setting mental RFC; and failed to include certain physical limitations in the RFC. However, plaintiff did not explain how the ALJ failed to consider her impairments in combination. The ALJ adopted a long list of severe impairments and included in the RFC limitations pertaining to each of the affected areas. Further, while it is true that the ALJ may not select and discuss only that evidence which supports her conclusion, the ALJ is also not required to discuss every piece of evidence in the record. In the present case, the ALJ produced a fourteen-page, single-spaced opinion, which sufficiently discussed the evidence of record. (R. 20 at 37-38.)

I also found that the ALJ provided sufficient reasons for discounting Dr. Pletcher's report. In addition to relying on the (in)frequency of plaintiff's visits with this doctor, the ALJ explained that the report was contrary to other evidence of record, including the doctor's own treatment notes. The ALJ cited specific medical evidence suggesting mild symptoms at the outset of treatment and a decrease in symptoms and improved ability to function

---

[1] I provide herein only a summary of my conclusions on the merits.

3

following treatment, based on which the ALJ reasonably rejected the very severe limitations in Dr. Pletcher's report. Plaintiff cited evidence she believed bolstered Dr. Pletcher's findings, but this amounted to little more than a suggestion that I re-weigh the evidence, which is not part of judicial review. (R. 20 at 38-41.)

I also rejected plaintiff's contention that the ALJ failed to set forth specific mental limitations in the RFC and in her questions to the VE. Plaintiff cited no authority supporting her argument that the ALJ expressed mental RFC in improper terms. Further, the ALJ applied the special technique applicable to mental claims, first reviewing plaintiff's mental impairments under the "B criteria," then acknowledging that the determination of mental RFC required a more detailed assessment. I found that any error in the ALJ's evaluation of mental RFC was harmless because – aside from Dr. Pletcher's report, which the ALJ reasonably discounted – plaintiff was unable to point to any evidence of significant limitations in the relevant areas. (R. 20 at 41-44.)

I likewise rejected plaintiff's claim that the ALJ erred in setting physical RFC. The ALJ conducted a thorough review of the record on this issue, and I declined plaintiff's invitation to re-weigh the evidence or second guess the ALJ's reasonable evaluation of it. I also found that any error in expressing RFC in terms of "frequent" rather than "occasional" use of the right arm was harmless; the jobs the ALJ relied on at step five required only occasional use of the right arm, according to the VE's testimony. (R. 20 at 44-46.)

**B.**

On the credibility issue, plaintiff argued that the ALJ failed to make a proper finding under SSR 96-7p, but I disagreed. The ALJ acknowledged the two-step process set forth in that Ruling, including the requirement that she make a finding based on the entire record at the second step. The ALJ then summarized the testimony and other evidence of record,

4

concluding that while plaintiff's impairments could produce the symptoms alleged, her statements about the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's RFC. The ALJ provided specific reasons for this conclusion over a page and a half of the decision, touching on the factors set forth in SSR 96-7p. The ALJ did not, as plaintiff claimed, rely solely on a lack of objective medical support in finding her less than fully credible. Nor did the ALJ err in considering, as relevant factors, plaintiff's conservative treatment and her daily activities. (R. 20 at 46-50.)

## C.

On the step five issue, I first rejected plaintiff's claim that the ALJ posed an incomplete hypothetical question to the VE. (R. 20 at 51-52.) However, I concluded that plaintiff's final argument – that the ALJ failed to reconcile potential conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") – had traction. Plaintiff argued that the jobs identified by the VE were at odds with the RFC for simple, unskilled work involving no public contact and only occasional interaction with co-workers. On review of the job requirements listed in the DOT and its companion volume, the Selected Characteristics of Occupations ("SCO"), and the relevant case-law, I found that a possible conflict existed, and that the ALJ improperly refused to permit plaintiff's counsel to fully explore the issue at the administrative level. (R. 20 at 52.)

At the hearing, plaintiff's counsel sought to expose conflicts between the VE's testimony and the DOT, and the VE responded that she could not answer the question without "looking it up." (Tr. at 741.) Later, counsel asked the VE to provide DOT codes, and the VE stated that she could get them and send them to counsel, but the ALJ stated: "No, I don't think we're going to be doing anything . . . after the hearing sending those." (Tr.

5

at 744.) Thus, counsel made an effort to explore possible conflicts with the DOT but was prevented from doing so, contrary to the case-law requiring that the data and reasoning underlying an expert's opinion be "available on demand." McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004); see also Hofer v. Astrue, 588 F. Supp. 2d 952, 967 (W.D. Wis. 2008).

Plaintiff argued (and the Commissioner did not dispute) that the positions identified by the VE corresponded to DOT # 239.567-010, which, according to the SCO, requires performing a "variety of duties," including speaking and signaling to people. The Commissioner noted that this position has an "SVP" (special vocational preparation) of 2, which is the equivalent of unskilled work, see SSR 00-4p (stating that "unskilled work corresponds to an SVP of 1-2"), and which the regulations further describe as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. § 404.1568(a). However, plaintiff noted that according to the DOT this job has a "Reasoning Development Level" of 2, which requires the worker to be able to apply commonsense understanding to carry out "detailed but uninvolved" written and oral instructions. I noted that courts were divided on whether a limitation to "simple, routine" work, such as the ALJ imposed in the present case, was consistent with the ability to follow "detailed but uninvolved" instructions. (R. 20 at 54-56, collecting cases).

Because the ALJ short-circuited the inquiry in this case, leaving unresolved two potential conflicts with the DOT ("frequent" v. "occasional" use of the hand, and a limitation to "simple, routine" work in a reasoning development level 2 job), I found it unnecessary to choose a side in this debate.[2]  Rather, I found it "most appropriate to remand the matter

---

[2] I note that shortly after I issued my merits decision in this case the Seventh Circuit rejected a DOT argument similar to the one plaintiff made here. In Terry v. Astrue, 580 F.3d

6

for further proceedings on this issue." (R. 20 at 56, citing Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (remanding to obtain VE testimony to determine whether a claimant limited to following only simple instructions could engage in unskilled sedentary work when many jobs in that category require reasoning at level two or higher); Clarendon v. Astrue, No. ED CV 07-1520-E, 2008 WL 2561894, at*2 (C.D. Cal. Jun. 26, 2008) ("Given this lack of clarity, at a minimum the ALJ erred in failing to inquire through a vocational expert into the possible inconsistency between a restriction to simple instructions and an aptitude sufficient to understand detailed but uninvolved instructions.").)

---

471, 478 (7th Cir. 2009), the plaintiff noted that the jobs listed by the VE required a reasoning level of three, which she claimed conflicted with the ALJ's limitation to "simple" work. The court of appeals saw no apparent conflict:

> A GED reasoning score of three means that the claimant must be able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Dep't of Labor, Dictionary of Occupational Titles, App'x C(III). Tellingly, Terry does not argue that she cannot perform these skills, perhaps because the record suggests she can: she finished high school, completed training to become a certified nurse's assistant, and has the cognitive capacity to follow simple instructions. See Renfrow, 496 F.3d at 921 (job requiring level three reasoning was not inconsistent with claimant's ability to follow only simple, concrete instructions).

Id. The court went on to note that to the extent that there was a conflict, SSR 00-4p requires the ALJ to obtain an explanation only when the conflict between the DOT and the VE's testimony is "apparent." Because plaintiff Terry did not identify any conflict at the hearing, she had to show that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. Given that her educational background and cognitive abilities appeared to match the requirements of reasoning level three, the court found that any conflict was not so obvious that the ALJ should have pursued the question. Id. In the present case, as discussed in the text, plaintiff did attempt to explore DOT conflicts at the hearing. However, under Terry, it may be that a limitation to "simple, routine" work is not inconsistent with reasoning level two.

7

**III.**

I thus rejected most of plaintiff's arguments for reversal, remanding on only one issue. "It is true that EAJA fees are not determined by the number of successful arguments, but a party's success on a single claim will rarely be dispositive of whether the government's overall position was substantially justified." Stewart, 561 F.3d at 683. Regardless of the specific basis for the remand, the district court must consider the government's position in the case as a whole, including both its litigation positions and its pre-litigation conduct, in determining substantial justification. The court does not based its substantial justification determination only on the successful issue(s) identified in the remand order. Id. at 683-84.

I find the government's position substantially justified in this case. As discussed above, I found no reversible error in the ALJ's decision on the RFC and credibility issues plaintiff raised; nor can I find unreasonable any of the litigation positions taken by the Commissioner on those issues. On the VE/DOT issue, as was evident from the case-law discussion in my merits decision, courts have differed on whether a limitation to "simple, routine" work is consistent with the ability to follow "detailed but uninvolved" instructions. Such "uncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position." Marcus v. Shalala, 17 F.3d 1033, 1037 (7th Cir. 1994).[3] My merits decision also contains no "strong language" against the government's position on this issue (or any issue in the case). To the contrary, I noted the closeness of the question and found it "most appropriate" to remand the case to explore the potential conflicts. And, given the

---

[3] And, as discussed in n.2, supra, the Seventh Circuit suggested in Terry that there may not be a conflict in these circumstances.

8

legal uncertainty, the Commissioner was justified in arguing that any potential conflict did not warrant reversal.

Plaintiff argues that the ALJ violated well-established law by failing to resolve the conflicts between the DOT and the VE's testimony. See SSR 00-4p; McKinnie, 368 F.3d at 911. While it is well-settled that the ALJ must resolve such conflicts, as is evident from the above discussion, the existence of actual conflicts in this case is uncertain. Plaintiff also argues that disallowing fees because counsel pressed multiple arguments, only one of which prevailed, unfairly penalizes counsel for zealous advocacy. I do not deny this application based on argument counting, but rather based on my conclusion that the Commissioner's position as a whole was substantially justified. See Stewart, 561 F.3d at 683-84 (explaining that the court does not engage in "argument counting" by considering all of the issues raised, rather than only the one successful issue).

Finally, plaintiff states that the ALJ refused to permit post-hearing clarification of the DOT codes, an issue unaffected by the legal uncertainty discussed in the merits decision. But ALJs possess considerable discretion in their conduct of a proceeding. See Richardson v. Perales, 402 U.S. 389, 400 (1971). While I found that the ALJ's failure to permit full inquiry into this area warranted remand, I cannot conclude that it defeats substantial justification of the government's overall position. See, e.g., Hendricks v. Astrue, No. 1:08-cv-0376, 2009 WL 1941342, at *4 (S.D. Ind. July 2, 2009 (Hamilton, J.) (denying fees where the plaintiff raised several issues, but only one was a successful challenge, and the ALJ's treatment of that one issue was at least understandable). The Commissioner mounted a reasonable, if ultimately unsuccessful, defense of the ALJ on this issue based on the regulations applicable to unskilled work.

9

**IV.**

**THEREFORE, IT IS ORDERED** that plaintiff's application for an award of attorney's fees (R. 25) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of February, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge